Moss v. Towell, 2018 NCBC 20.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

JOHN MOSS, on Behalf of Himself and
All Others Similarly Situated,

        Plaintiff,

    v.

JOSEPH H. TOWELL; SCOTT M.
CUSTER; J. ADAM ABRAM;
MICHAEL S. ALBERT; DAVID S.
BRODY; HARRY M. DAVIS; BARRY Z.
DODSON; THOMAS J. HALL;
THIERRY F. HO; STEVEN J.
LERNER; MICHAEL S. PATTERSON;
MARY E. RITTLING; HARRY C.
SPELL; RICHARD A. URQUHART III;
NICOLAS D. ZERBIB; and F.N.B.
CORPORATION,

        Defendants,

   and

YADKIN FINANCIAL
CORPORATION,

        Nominal Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 11038

**ORDER & OPINION APPROVING
SETTLEMENT**

1.    THIS MATTER is before the Court on Plaintiff's Motion for Final Approval of Settlement ("Motion for Settlement Approval"). For the reasons discussed below, the Court RESERVES and retains jurisdiction to rule on a pending request for a fee award, CERTIFIES a Settlement Class as defined below, APPROVES the Settlement, and DISMISSES all class claims with prejudice.

*Rigrodsky & Long, P.A., by Seth D. Rigrodsky (pro hac vice), Brian D. Long (pro hac vice), and Jeremy J. Riley (pro hac vice), and the Law Offices of James Scott Farrin, by Gary W. Jackson for Plaintiff John E. Moss.*

*Reed Smith LLP, by Roy W. Arnold (pro hac vice), and Smith Moore Leatherwood LLP, by Robert R. Marcus for Defendant F.N.B. Corporation.*

*Skadden, Arps, Slate, Meagher & Flom LLP, by Paul J. Lockwood (pro hac vice), Joseph O. Larkin (pro hac vice), and Alyssa S. O'Connell (pro hac vice), Moore & Van Allen PLLC, by Mark A. Nebrig, and Cadwalader, Wickersham & Taft LLP, by Jonathan M. Watkins for Defendants Yadkin Financial Corporation, Joseph H. Towell, Scott M. Custer, J. Adam Abram, Michael S. Albert, David S. Brody, Harry M. Davis, Barry Z. Dodson, Thomas J. Hall, Thierry F. Ho, Steven J. Lerner, Michael S. Patterson, Mary E. Rittling, Harry C. Spell, Richard A. Urquhart III, and Nicolas D. Zerbib.*

Gale, Chief Judge.

## I.     NATURE OF THE DISPUTE AND PROCEDURAL HISTORY

2.     John E. Moss ("Plaintiff") is a former owner of Yadkin Financial Corporation ("Yadkin") stock.

3.     On July 20, 2016, Yadkin entered into a merger agreement ("Merger"), whereby F.N.B. Corporation ("FNB") agreed to acquire all outstanding Yadkin stock, and Yadkin shareholders agreed to receive 2.16 shares of FNB stock for each Yadkin share they owned ("Transaction").

4.     On September 1, 2016, Plaintiff filed a putative class action and shareholder derivative complaint ("Complaint") against Yadkin directors Joseph H. Towell, Scott M. Custer, J. Adam Abram, Michael S. Albert, David S. Brody, Harry M. Davis, Barry Z. Dodson, Thomas J. Hall, Thierry F. Ho, Steven J. Lerner, Michael S. Patterson, Mary E. Rittling, Harry C. Spell, Richard A. Urquhart III, Nicolas D.

Zerbib (collectively, the "Individual Defendants"), FNB, and Yadkin (collectively with the Individual Defendants, "Defendants").

5.     The Complaint asserted direct and derivative claims that (1) the Individual Defendants breached their fiduciary duties when they agreed to the Merger with allegedly unfavorable terms that undervalued Yadkin's shares, and (2) FNB aided and abetted the Individual Defendants in breaching their fiduciary duties. (Compl. ¶¶ 56–84, ECF No. 1).

6.     On October 5, 2016, the action ("Action") was designated as a complex business case by order of the Chief Justice of the Supreme Court of North Carolina and then assigned to the undersigned the following day.

7.     On October 17, 2016, Yadkin filed its definitive proxy statement ("Initial Proxy") with the SEC, which disclosed information about the Merger.

8.     On October 18, 2016, Plaintiff filed an amended complaint ("Amended Complaint"), which further alleged that the Individual Defendants breached their fiduciary duties by failing to disclose allegedly material information about the Merger.  (Am. Compl. ¶¶ 89–90 ECF No. 7.)

9.     On October 20, 2016, Plaintiff filed a Motion for Expedited Proceedings, and Yadkin agreed to provide discovery to Plaintiff on an expedited basis in advance of a motion and hearing for a preliminary injunction to enjoin the Merger.  The parties conducted expedited discovery.

10.     On November 22, 2016, Plaintiff filed a Motion for a Preliminary Injunction, seeking to enjoin a potential shareholder vote on the Merger until Yadkin

disclosed additional information regarding Yadkin's financial projections and valuation.

11. On November 29, 2016, the parties entered into a Memorandum of Understanding ("MOU") to settle the action so long as Defendants made additional, agreed-upon disclosures ("Supplemental Disclosures") before a shareholder vote on the Merger ("Settlement").

12. On November 29, 2016, Yadkin filed the Supplemental Disclosures with the SEC.

13. On December 9, 2016, Yadkin's shareholders approved the Merger ("Shareholder Vote") and, on March 11, 2017, the Merger closed.

14. Plaintiff conducted confirmatory discovery following the Shareholder Vote.

15. On October 20, 2017, Plaintiff submitted a Stipulation and Agreement of Compromise, Settlement, and Release (together with exhibits, "Stipulation"), and filed a Motion for Preliminary Approval of Settlement, Certification of Class, Approval of Class Notice, and Final Approval Hearing Scheduling.

16. On November 16, 2017, the Court entered its Order Preliminarily Approving Settlement and Certifying Class and Scheduling Order ("Order Preliminarily Approving Settlement"), which: (1) preliminarily certified a class action pursuant to Rule 23 of the North Carolina Rules of Civil Procedure, solely for the purpose of effectuating the Settlement and subject to a hearing to further address the fairness, reasonableness, and adequacy of the Settlement ("Settlement Hearing");

(2) set the Settlement Hearing for February 28, 2018; and (3) approved the form and method of notice ("Notice") described in the Order Preliminarily Approving Settlement.

17. On February 7, 2018, Plaintiff filed the Motion for Settlement Approval.

18. The Court received an affidavit certifying that, as of February 13, 2018, 19,881 copies of the Notice approved by the Court in its Order Preliminarily Approving Settlement were mailed to class members and nominees. (Aff. Service Notice Pendency Class Action, Class Action Determination, Proposed Settlement Class Action, Settlement Hearing, Right to Appear 4, ECF No. 45.)

19. On February 28, 2018, the Court conducted the Settlement Hearing, at which class counsel and counsel for Defendants appeared and responded to the Court's questions. Prior to that hearing, the Court had advised the parties of questions on which the Court must be satisfied prior to its consideration of any award of attorneys' fees, costs, or expenses, including whether the fee agreement between class counsel and Plaintiff complied with Rules 1.5 and 1.8 of the North Carolina Rules of Professional Conduct. *See* N.C. Rules Prof'l Conduct Rs. 1.5, 1.8. Because the Settlement does not depend upon the Court's award of any attorneys' fees, the Court, in its discretion, elected to separately consider the Motion for Settlement Approval while reserving its consideration of counsel's request for attorneys' fees, costs, and expenses.

20. The Court was further advised at the Settlement Hearing that no member of the proposed class had filed an objection to the Settlement. One class member attended the hearing but lodged no objection and did not request to be heard.

## II. CLASS CERTIFICATION AND SETTLEMENT APPROVAL

### A. The Court Certifies a Settlement Class.

21. The Motion for Settlement Approval requests, and the Settlement contemplates, that the Court will certify a settlement class for purposes of the Settlement only, pursuant to Rule 23 of the North Carolina Rules of Civil Procedure ("Rule 23").

22. Rule 23 allows North Carolina trial courts to certify a class action if it finds that each of the following requirements are met:

> (1) the existence of a class, (2) . . . the named representative will fairly and adequately represent the interests of all class members, (3) . . . there is no conflict of interest between the representative and class members, (4) . . . class members outside the jurisdiction will be adequately represented, (5) . . . the named party has a genuine personal interest in the outcome of the litigation, (6) . . . class members are so numerous that it is impractical to bring them all before the court, [and] (7) . . . adequate notice of the class action is given to class members.

*In re PokerTek Merger Litig.*, No. 14 CVS 10579, 2015 NCBC LEXIS 10, at *9 (N.C. Super. Ct. Jan. 22, 2015) (quoting *Ehrenhaus v. Baker*, Order No. 08 CVS 22632 ¶ 39 (N.C. Super. Ct. Feb 5, 2010)) (alterations in original); *see also* N.C. Gen. Stat. § 1A-1, Rule 23 (2015).

23. "[A] 'class' exists . . . when the named and unnamed members each have an interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members." *Crow v. Citicorp Acceptance Co.*, 319

N.C. 274, 280, 354 S.E.2d 459, 464 (1987). When a class meets the above requirements, "this Court has regularly acknowledged its broad discretion in considering class certification." *In re Krispy Kreme Doughnuts S'holder Litig.*, No. 16 CVS 3669, 2018 NCBC LEXIS 1, at *8 (N.C. Super. Ct. Jan. 2, 2018) ("*Krispy Kreme*"); *see also*, *In re Newbridge Bancorp S'holder Litig.*, No. 15 CVS 9251, 2016 NCBC LEXIS 91, at *15 (N.C. Super. Ct. Nov. 22, 2016); *In re Harris Teeter Merger Litig.*, No. 13 CVS 12579, 2014 NCBC LEXIS 47, at *8 (N.C. Super. Ct. Sept. 24, 2014).

24.     Having thoroughly considered the matters of record, the Court finds and concludes that the requirements of Rule 23 have been met and that it should, in its discretion, certify a settlement class ("Settlement Class"). Specifically, the Court finds and concludes that: the named and unnamed members of the Settlement Class have a common interest in the same issues of law and fact; Plaintiff's claims are typical of the members of the proposed class; Plaintiff has a genuine personal interest in the Action; there is no apparent conflict of interest between Plaintiff and any unnamed member of the proposed class; Plaintiff can adequately represent and has adequately represented unnamed members of the proposed class, both within and without North Carolina; the common issues presented in the Action predominate over any issues that might only affect members individually; the number of members of the proposed class are so numerous that joining them individually is impractical; the Action seeks relief, including injunctive relief, that is common to all members of the proposed class; the Notice provided to putative class members afforded adequate due process to putative class members and was appropriate, the best notice practicable

under the circumstances, and otherwise in full accord with all substantive and procedural requirements imposed by law; and a class action is the efficient, practical, and superior method for proceeding.

25.    Accordingly, in its discretion, the Court, solely for purposes of effectuating the Settlement, certifies the following non-opt out Settlement Class, defined as:

> any and all record holders and beneficial owners of common stock of Yadkin who held or owned such stock at any time during the period beginning on and including July 21, 2016 through and including March 11, 2017, the date of consummation of the Yadkin/FNB merger (the "Class Period"), and including any and all of their respective successors-in-interest, successors, predecessors-in-interest, predecessors, representatives, trustees, executors, administrators, estates, heirs, assigns and transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, together with their predecessors-in-interest, predecessors, successors-in-interest, successors, and assigns. Excluded from the Settlement Class are Defendants and their immediate family members, any entity in which any Defendant has a controlling interest, and any successors-in-interest of such entity.

26.    The Court appoints Plaintiff as Class Representative and Rigrodsky & Long, P.A. as lead counsel for the Settlement Class ("Class Counsel").

**B.    The Court Defers Ruling on Class Counsel's Request for the Award of Attorneys' Fees, Costs, and Expenses.**

27.    Neither the Settlement nor Court approval of the Settlement depends upon the Court's approval of attorneys' fees, costs, or expenses to Class Counsel. (Stipulation and Agreement of Compromise, Settlement and Release 13 ("Stipulation"), ECF No. 35 ("[T]he Settlement is expressly not conditioned on[ ] Court approval of attorneys' fees, costs[,] and expenses.").)

28.     The Court, in its discretion, reserves determination of Class Counsel's request for fees, costs, and expenses and proceeds to consider the fairness, reasonableness, and adequacy of the Settlement independent of the Court's review of any such award.

29.     The parties have requested an opportunity to submit additional authorities or supporting materials regarding Class Counsel's request for fees, costs, and expenses.  Any such supplemental filings shall be made on or before March 30, 2018.

**C.     The Settlement is Fair, Reasonable, and Adequate.**

> **(1)     The Court has examined the balance between the "give" and the "get" of the Settlement terms.**

30.     "Rule 23 requires court approval of any class settlement, recognizing that class settlements present particular due process considerations because they bind individuals not before the court." *Krispy Kreme*, 2018 NCBC LEXIS 1, at * 12 (citing *Ehrenhaus v. Baker*, 216 N.C. App. 59, 72, 717 S.E.2d 9, 19 (2011) ("*Ehrenhaus I*")).  However, North Carolina courts "have favored settlement of class actions provided that a court determines that there has been fair notice, an opportunity for class members to object, and that the settlement terms are fair, reasonable, and adequate." *Krispy Kreme*, 2018 NCBC LEXIS 1, at *12, (citing *Ehrenhaus I*, 216 N.C. App. at 72, 717 S.E.2d 9, at 19).

31.     The Court considers various factors when determining whether a proposed class settlement is fair, reasonable, and adequate, including:

(a) the strength of the plaintiff's case, (b) the defendant's ability to pay, (c) the complexity and cost of further litigation, (d) the amount of opposition to the settlement, (e) class members' reaction to the proposed settlement, (f) counsel's opinion, and (g) the stage of the proceedings and how much discovery has been completed.

*In re Newbridge Bancorp S'holder Litig.*, 2016 NCBC LEXIS 91, at *21–22 (citing *Ehrenhaus I*, 216 N.C. App. at 73–75, 717 S.E.2d at 19–20).

32. As this Court recently noted, "[a] court may be particularly vigilant in its inquiry where a proposed settlement yields substantial rewards for class counsel without any corresponding monetary benefit to class members." *Krispy Kreme*, 2018 NCBC LEXIS 1, at *12. In a disclosure-based settlement, courts maintain such vigilance by carefully examining the "give" and the "get" of the settlement. *Id.* at *17 (citing *In re Newbridge S'holder Litig.*, 2016 NCBC LEXIS 91, at *22). In such settlements, "the 'get' is the value of the supplemental disclosures and the 'give' is the scope of the release encompassed by the settlement." *Krispy Kreme*, 2018 NCBC LEXIS 1, at *18. While the Court must "be careful not to simply substitute its own judgment for that of competent litigation counsel that negotiated the settlement terms at arm's length[,]" it must also "guard against settlements based on inadequate class representation and settlements reached through collusion that benefit only non-class members." *Id.* at *19.

33. However, "[a]s the scope of the release narrows, . . . the Court's inquiry as to the materiality of supplemental disclosures and their adequacy to support the release tends to a more traditional settlement inquiry where the judgment of competent counsel is accorded significant weight." *Id.* at *19 (citing *Ehrenhaus I*, 216

N.C. App. at 72, 74, 717 S.E.2d at 19–20). Accordingly, "[t]he Court must still engage in its fairness inquiry and satisfy itself that the supplemental disclosures are 'material' as that term has been defined by North Carolina's appellate courts, while at the same time resisting a reflexive rejection of a class settlement on grounds of immateriality or insufficient consideration." *Id.* at *20. As this Court summarized in *Krispy Kreme*,

> the Court must examine the materiality of any supplemental disclosures and find that they provide reasonable consideration for the class release. But where there is little or no opposition by class members, the Court is reluctant to set aside a fair arm's length settlement negotiated between competent counsel if the disclosures are not plainly immaterial and the release is reasonable.

2018 NCBC LEXIS 1, at *21.

### (2) <u>The Supplemental Disclosures are sufficiently material to serve as reasonable consideration for the narrow release granted.</u>

34.    North Carolina uses the standard of materiality set out by the Supreme Court of the United States in *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438 (1976). *See Ehrenhaus I*, 216 N.C. App. at 88, 717 S.E.2d at 28–29 (adopting *TSC Industries*' materiality standard); *Krispy Kreme*, 2018 NCBC LEXIS 1, at *21–22 (same). In *TSC Industries*, the Supreme Court held that:

> [a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. . . . It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote. What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed

by the reasonable investor as having significantly altered the "total mix" of information made available.

426 U.S. at 449; *see also Krispy Kreme*, 2018 NCBC LEXIS 1, at \*21–22.

35. The Supplemental Disclosures on which the Settlement is based fall into two areas: (1) disclosures relating to the background of the Merger and (2) disclosures relating to Yadkin's financial projections.

36. The Initial Proxy stated that four parties—that is, FNB and parties A, B, and C—were interested in acquiring Yadkin. (Pl's. Mem. L. Supp. Mot. Final Approval Settlement 13, ECF No. 43.) The Supplemental Disclosures, however, informed shareholders that another party—party D—was interested in acquiring Yadkin. Further, the Supplemental Disclosures stated that each of the parties, including FNB, had signed a non-disclosure agreement ("NDA") with Yadkin, which, Plaintiff asserts, corrected "a misleading impression that . . . parties [A through D] were not seriously interested in acquiring Yadkin." (Pl's. Mem. L. Supp. Mot. Final Approval Settlement 13–14.) The Supplemental Disclosures also informed shareholders that the NDAs Yadkin entered into with parties A, C, and D contained "don't ask, don't waive" ("DADW") standstill provisions, which precluded interested parties from offering to acquire Yadkin without a written invitation from Yadkin's board. (Pl's. Mem. L. Supp. Mot. Final Approval Settlement 14.)

37. The Supplemental Disclosures regarding Yadkin's financial projections included Yadkin's projected earnings per share, net income, dividends per share, and tangible book value for the years 2018, 2019 and 2020. The Initial Proxy contained only Yadkin's projections for 2016 and 2017. Yadkin's financial advisor used the

2018, 2019, and 2020 projections to calculate Yadkin's "critical 2020 terminal value." (Pl's. Mem. L. Supp. Mot. Final Approval Settlement 15–16.)

38.     The release contained in the Stipulation ("Release") releases claims based on "ownership of Yadkin common stock during the Class Period that relate in any way" to: (1) the Merger; (2) any deliberations in connection with the Merger; (3) consideration received by class members in connection with the Merger; (4) consideration received by non-class members in relation to the Merger; (5) the Shareholder Vote; (6) the statutory fiduciary obligations of the released parties in connection with the Merger; or (7) any of the allegations filed in the Action. (Stipulation 9–10.)  The Release does not include "claims under federal or state law that do not in any respect arise out of, or do not relate to" the Merger or the Shareholder Vote.  (Stipulation 10.)  The Release, as this Court noted regarding a substantially similar release in a disclosure-only settlement, "is not significantly broader than the effect of the Shareholder Vote." *Krispy Kreme*, 2018 NCBC LEXIS 1, at *25.

39.     As to the Supplemental Disclosures regarding the NDAs and the DADW provisions, this Court has found similar disclosures adequate to support a settlement. *In re Harris Teeter Merger Litig.*, 2014 NCBC LEXIS 47, at *18–19 (citing *In re Ancestry.com Inc. S'holder Litig.*, C.A. No. 7988-CS, 2012 Del. Ch. LEXIS 294 (Del. Ch. Dec. 17, 2012) (transcript)).  As to the Supplemental Disclosures regarding the projections relied on by Yadkin's financial advisor to form a fairness opinion, this

Court has found similar disclosures adequate to support a settlement. *See, e.g.*, *Krispy Kreme*, 2018 NCBC LEXIS 1, at \*25–27.

40. Regarding the financial metrics disclosures, Class Counsel explained at the Settlement Hearing that Yadkin's financial advisor used the data for 2018, 2019, and 2020 to generate the Net Present Value Analysis of Yadkin. While Class Counsel conceded that some metrics, including earnings per share, could arguably have been calculated without those Supplemental Disclosures, other metrics, including tangible book value, could not have been. Defendants, without conceding that they breached their fiduciary duties when issuing the Initial Proxy, do not challenge that Class Counsel "presents a reasoned argument that some shareholders might have found the Supplemental Disclosures to be material." *Id.* at \*27. Further, while Class Counsel forthrightly acknowledged that it may have been possible to reasonably approximate underlying assumptions made in the fairness opinion without the Supplemental Disclosures, Class Counsel maintained that, regardless, the Supplemental Disclosures regarding the DADW standstill agreements were plainly material and essential to any class member's full consideration of whether to approve the Merger.

41. In response, Defendants' counsel candidly admitted the potential relevance of the disclosures regarding the DADW standstill agreements in light of the uncertainty of developed precedents regarding such agreements. While Defendants remain confident that they would have successfully defended against any effort to enjoin either the Merger or the shareholder meeting to consider it, there is

developed precedent that would have made any such injunction request at least colorable. *See In re Complete Genomics S'holder Litig.*, C.A. No. 7888-VCL 14–18 (Del. Ch. Nov. 27, 2012) (transcript) (enjoining the effects of DADW clauses and holding that the clauses resulted in a board willfully blinding itself to the possibility of a competing offer); *see also Koehler v. NetSpend Holdings Inc.*, No. CIV. A. 8373-VCG, 2013 Del. Ch. LEXIS 131, at *68–73 (Del. Ch. May 21, 2013) (discussing *Complete Genomics* and concluding that a sale process was unreasonable). Defendants thus join Class Counsel in asserting that the Supplemental Disclosures, at least as to the DADW agreements, were adequate consideration for the tailored Release included in the Settlement.

42. The Court finds and concludes that the Supplemental Disclosures are "reasonable consideration" for the Settlement. *Krispy Kreme*, 2018 NCBC LEXIS 1, at *21. Further, the Court finds that the value of the Supplemental Disclosures is not "plainly disproportionate" to the scope of the Release, which is narrow, and that the Release is "reasonable." *Id.* at *20, 21.

43. The Court has further considered the *Ehrenhaus* factors and concludes that they support Settlement approval. Defendants' ability to pay is not a consideration in this case. The Shareholder Vote and the opinion of counsel weigh heavily in favor of court approval. In light of the Supplemental Disclosures and the Shareholder Vote, the record does not suggest that the shareholders have a meritorious process-based claim. Class Counsel advises, and the Court finds no

reasoned basis to disagree, that there is no reasonable likelihood of any finding that the Merger was based on an unfair price.

44. There is also no basis to suspect that the parties colluded to reach the Settlement, and, instead, it appears that they reached the Settlement through arm's-length negotiations. That counsel for parties on both sides include some of the most prominent national firms well-experienced in litigation of a similar nature further supports court approval.

## III. CONCLUSION

45. Based on the above findings and conclusions, the Court finds the Settlement to be fair, reasonable, adequate, and in the best interests of the Settlement Class, and it is hereby APPROVED. The parties are hereby authorized and directed to comply with and to consummate the Settlement in accordance with its terms and provisions, and the Clerk is directed to enter and docket this Order and Final Judgment in the Action.

46. This Order and Final Judgment shall not constitute any evidence or admission by any of the parties herein that any acts of wrongdoing have been committed by any of the parties to the Action and should not be deemed to create any inference that there is any liability therefor.

47. The Action is hereby DISMISSED WITH PREJUDICE in its entirety on the merits and, except as provided in the Stipulation, without fees, costs, and expenses beyond those approved herein and with the understanding that this

dismissal shall not affect or preclude the Court's further consideration of Class Counsel's request for a fee award.

48. This Order and Final Judgment provides for the full and complete discharge, dismissal with prejudice, settlement and release of, and a permanent injunction barring, any and all manner of claims, demands, rights, liabilities, losses, obligations, duties, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature or description whatsoever, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, that Plaintiff or any or all other members of the Settlement Class ever had, now have, or may have, whether direct, derivative, individual, class, representative, legal, equitable or of any other type, or in any other capacity, based on his, her, or its ownership of Yadkin common stock during the Class Period, against any of the Released Parties (as defined below), whether based on state, local, foreign, federal, statutory, regulatory, common or other law or rule (including, but not limited to, any claims under federal or state securities laws or state disclosure law or any claims that could be asserted derivatively on behalf of Yadkin), which, now or hereafter, are based upon, arise out of, relate in any way to, or involve, directly or indirectly, any of the actions, transactions, occurrences, statements, representations, misrepresentations, omissions, allegations, facts, practices, events, claims or any other matters, things or causes whatsoever, or any

series thereof, that were or could have been alleged, asserted, set forth, claimed, embraced, involved, or referred to in, or related to, directly or indirectly, the Action, or the subject matter thereof in any court, tribunal, forum or proceeding, including, without limitation, any and all claims that are based upon, arise out of, relate to, or involve, directly or indirectly, (i) the Transaction or the Merger (or any amendment thereto), (ii) any deliberations or negotiations in connection with the Transaction or the Merger (or any amendments thereto), including the process of deliberation or negotiation by Defendants, and any of their respective officers, directors, principals, partners or advisors, (iii) the consideration received by Settlement Class members in connection with the Transaction or the Merger, (iv) the consideration received by any other person in connection with the Transaction or the Merger (including, but not limited to, any Yadkin or FNB agreement), (v) the Shareholder Vote, including any disclosures or statements relating to the Transaction or the Merger in the Initial Proxy (including any amendments) or other public disclosures, including, without limitation, claims under the federal securities laws within the exclusive jurisdiction of the federal courts, (vi) the statutory or fiduciary obligations, if any, of the Released Parties (as defined below) in connection with the Transaction or the Merger, or (vii) any of the allegations in any complaint or amendment(s) thereto filed in the Action (collectively, the "Released Claims"); provided, however, for the avoidance of doubt, nothing in this release intends for Released Claims to include (x) the right to enforce the Stipulation or the Settlement, or (y) claims under federal or state law that do not

in any respect arise out of, or do not relate to, the Transaction, the Merger, or the Shareholder Vote.

49. Defendants release Plaintiff and Plaintiff's counsel from all claims, complaints, petitions, liabilities, or sanctions arising out of the investigation, commencement, prosecution, settlement, or resolution of the Action, and shall be barred from asserting the same; provided, however, that such releases will not include a release of the right to enforce the Stipulation or the Settlement.

50. Whether or not each or all of the following persons or entities were named, served with process, or appeared in the Action, "Released Parties" means FNB, Yadkin, Joseph H. Towell, Scott M. Custer, J. Adam Abram, Michael S. Albert, David S. Brody, Harry M. Davis, Barry Z. Dodson, Thomas J. Hall, Thierry F. Ho, Steven J. Lerner, Michael S. Patterson, Mary E. Rittling, Harry C. Spell, Richard A. Urquhart III, and Nicolas D. Zerbib, and each of their respective past or present family members, spouses, heirs, trusts, trustees, executors, estates, administrators, beneficiaries, distributees, foundations, agents, employees, fiduciaries, partners, control persons, partnerships, general or limited partners or partnerships, joint ventures, member firms, limited liability companies, corporations, parents, subsidiaries, divisions, affiliates, associated entities, shareholders, principals, officers, managers, directors, managing directors, members, managing members, managing agents, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, financial or investment advisors, advisors, consultants, investment bankers, entities providing any fairness opinion, underwriters, brokers, dealers,

lenders, commercial bankers, attorneys, personal or legal representatives, accountants, insurers, co-insurers, reinsurers, and associates, of each and all of the foregoing.

51.     Any party providing a release (a "Releasing Person") shall waive and relinquish, to the fullest extent permitted by law, the provisions, rights and benefits of any state, federal, or foreign law or principle of common law, which may have the effect of limiting the release set forth above. Plaintiff acknowledges, and the members of the Settlement Class shall be deemed by operation of the entry of a final order and judgment approving the Settlement to have acknowledged, that the foregoing waiver was separately bargained for, is an integral element of the Settlement, and was relied upon by each and all of the Defendants in entering into the Settlement.

52.     The fact of and provisions contained in the Stipulation, and all negotiations, discussions, actions, and proceedings in connection with the Stipulation, shall not be deemed or constitute a presumption, concession or an admission by any party in the Action, any signatory thereof or any Released Parties of any fault, liability, or wrongdoing or lack of any fault, liability, or wrongdoing, as to any facts or claims alleged or asserted in the Action, or any other actions or proceedings, and shall not be interpreted, construed, deemed, involved, invoked, offered, or received in evidence or otherwise be used by any person in the Action or any other action or proceeding, whether civil, criminal, or administrative, except in connection with any proceeding to enforce the terms of the Stipulation. The Released

Parties may file the Stipulation and/or this Order and Final Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

53.    The Court retains jurisdiction for the purposes of its further consideration of Class Counsel's request for an award of fees, costs, and expenses and, as necessary, to enforce this Order or the Stipulation.  Any supplemental filings in regard to Class Counsel's request for an award of fees, costs, and expenses shall be filed on or before March 30, 2018.

SO ORDERED, this the 6th day of March, 2018.

/s/ James L. Gale
_____
James L. Gale
Chief Business Court Judge